**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

**NADINE BISHOP, individually,**
Plaintiff,

v.

**CITY OF INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT (IMPD), et al.,**
Defendants.

**Case No. 1:25-cv-01358-MPB-TAB**

FILED
10/08/2026
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

## PLAINTIFF'S RESPONSE TO SEPTEMBER 30, 2026 ORDER TO SHOW CAUSE (DKT. 61)

Plaintiff Nadine Bishop, proceeding pro se solely in her individual capacity, respectfully responds to the September 30, 2026 Order to Show Cause (Dkt. 61). She submits this response within the fourteen-day period specified by the Court.

Plaintiff submits that final judgment should be deferred for the limited period requested in her separately submitted motion, through November 4, 2026, so that she may seek leave to present a complete, legally supported Second Amended Complaint confined to claims belonging to her personally. She does not ask that the Court reinstate any claim dismissed with prejudice, reopen discovery, or treat this response as an amended complaint.

Plaintiff recognizes that Rule 16(b)(4), Rule 15(a)(2), applicable immunity and timeliness requirements, and Rule 11 impose real limits on amendment. She requests an opportunity to tender a specific proposed pleading for judicial evaluation, not a determination now that her contemplated claim is established.

## I. THE EFFECT OF DOCKET 61

**1.** Dkt. 61 granted Defendants' Rule 12(b)(6) motion (Dkt. 28). It dismissed with prejudice claims asserted on behalf of Andrew McClain or his estate, the claim against IMPD as a nonsuable entity, the standalone first-party spoliation claim, and Plaintiff's investigation-based substantive-due-process claim. It dismissed all other claims without prejudice, denied pending motions as moot, and directed Plaintiff to show cause why final judgment should not issue. Dkt. 61 at 15.

**2.** Plaintiff accepts those limits for purposes of this response. She does not seek to represent Andrew's estate or children, recover estate or wrongful-death damages, reinstate IMPD as a suable party, pursue first-party spoliation as an independent tort, or claim a constitutional right to a particular police investigation, arrest, or prosecution.

**3.** The operative pleading considered in Dkt. 61 was Plaintiff's September 23, 2025 Amended Complaint (Dkt. 24). Plaintiff's later corrected September 2026 opposition (Dkt. 60) provided additional factual and legal arguments, but a brief did not amend that pleading. A further amendment therefore requires a proper motion under Rules 16(b)(4) and 15(a)(2) and compliance with Local Rule 15-1.

## II. SPECIFIC INDIVIDUAL THEORY PROPOSED FOR EVALUATION

**4.** Dkt. 24 placed Plaintiff's personal dealings with the Marion County Coroner's Office at issue. Plaintiff seeks to assess whether those events, together with later corroborating evidence, can support a legally distinct claim for intentional infliction of emotional distress (IIED) based on injury to Plaintiff herself, rather than injury or relief belonging to Andrew, his estate, or his children.

**5.** On August 6, 2023, Plaintiff visited the Coroner's Office with her cousin Shawnta Jenkins. Plaintiff asked to see Andrew's body. An employee responded with information concerning the condition of his body, and Plaintiff did not view him during that visit. This is a description of Plaintiff's recollection, not a purported verbatim quotation or proof that the employee acted with a wrongful purpose. Plaintiff also asked whether she needed to identify him and recalls being told that he had already been identified.

**6.** Plaintiff requested Andrew's identification card and wallet and recalls being informed that the identification card could not be released because of identity-theft concerns; she did not receive a wallet. Plaintiff later learned from the funeral director that reconstruction of Andrew's face was not possible, and she did not view him before final disposition. These facts concern Plaintiff's personal experience; standing alone, they do not establish an unlawful refusal, a legal entitlement to view the body, or intentional misconduct.

**7.** Official records describe the identification method inconsistently. The autopsy report states that Andrew was visually identified by family, while the Field Deputy Report records identification through a left-thumb IDENT fingerprint. Defendants acknowledged an error concerning the family-visual-identification notation. Dkt. 51 at PageID 270-271; Dkt. 51-3 at PageID 304; Dkt. 60, Exs. F, G, R. Plaintiff does not contend that the discrepancy alone proves intentional falsification, bad faith, or obstruction of litigation.

**8.** The contemplated individual remedy would be compensatory damages for severe emotional distress, if actionable and provable, caused by wrongful conduct affecting Plaintiff personally, distinct from the grief caused by Andrew's death. Indiana IIED law requires extreme and outrageous conduct, intentional or reckless culpability, causation, and severe distress. Cullison v. Medley, 570 N.E.2d 27, 31 (Ind. 1991). Johnson v. Marion County Coroner's Office, 971 N.E.2d 151 (Ind. Ct. App. 2012), involved materially more egregious

remains-related conduct and does not establish that Plaintiff's circumstances satisfy those elements.

**9.** Any proposed IIED count must identify a proper defendant; concrete conduct attributable to that defendant; nonconclusory facts concerning the required mental state, severe personal injury, and causation; and legally available individual relief. Plaintiff will not merely relabel negligence as intentional conduct or assert unsupported bad faith.

## III. IMMUNITY, NOTICE, LIMITATIONS, AND JURISDICTION

**10.** Dkt. 61 dismissed Plaintiff's pleaded negligence and mishandling claim against the Coroner's Office because the complaint lacked facts showing bad faith sufficient to overcome the autopsy-related immunity applied under Indiana Code section 36-2-14-13. Dkt. 61 at 14. The Court did not adjudicate a properly pleaded standalone IIED count; it also did not rule that such a proposed count would be viable. Any amendment must distinguish the precise challenged conduct from the performance of an autopsy only if there is a sound factual and legal basis to do so.

**11.** Plaintiff also recognizes potentially dispositive notice and limitations questions. Defendants' materials indicate that her tort-claim notice was received on July 29, 2025. Indiana ordinarily requires notice to a political subdivision within 180 days after the loss, and the ordinary personal-injury limitations period is two years. Plaintiff does not suggest that the later discovery of a record error automatically cures either requirement. Any proposed pleading and motion would identify the relevant dates and address timeliness, accrual, tolling, relation back if applicable, and futility.

**12.** Plaintiff acknowledges that IIED is a state-law tort, not an independent federal constitutional claim. If no viable federal claim survives, the Court may decline supplemental

jurisdiction under 28 U.S.C. section 1367(c)(3). That jurisdictional issue would also be addressed in any motion for leave.

**IV. THE DISTINCT FEDERAL ACCESS THEORY**

**13.** Plaintiff does not ask the Court to substitute a denial-of-access label for the investigation-based due-process claim dismissed with prejudice. A backward-looking access claim requires an identified nonfrivolous underlying personal civil action, official acts that deliberately frustrated its pursuit, and a particular remedy no longer available in another action. Christopher v. Harbury, 536 U.S. 403, 413-16 (2002); Harer v. Casey, 962 F.3d 299, 308-13 (7th Cir. 2020). Mere disagreement with police investigation does not establish that claim. Rossi v. City of Chicago, 790 F.3d 729, 734-36 (7th Cir. 2015).

**14.** On October 20, 2023, attorney Trevor J. Crossen told Detective Kelley Rhoda in writing that he represented Plaintiff concerning Andrew's death. Rhoda's November 14, 2023 email discussed her communication with Crossen concerning investigative results, insurance, and civil-case prospects. Crossen Law Firm's September 29, 2025 correspondence attributed its representation decision to information received from the detective, but concerned a wrongful-death matter. Dkt. 60, Exs. A, B, J.

**15.** Those communications do not presently demonstrate that Rhoda intentionally caused Plaintiff to lose a legally viable personal Coroner-related IIED remedy. Losing a particular lawyer is not, by itself, the permanently unavailable judicial remedy Harbury requires. Plaintiff will tender a separate federal access count only if she can support all required elements, including deliberate obstruction, personal causation, and a particular individual remedy permanently lost. Otherwise, that count will not be included.

## V. GROUNDS FOR A SHORT, DEFINED DEFERRAL OF JUDGMENT

**16.** The Case Management Plan's amendment deadline passed on November 18, 2025. Plaintiff acknowledges that Rule 16(b)(4) applies before Rule 15(a)(2), and that diligence is central to good cause. Alioto v. Town of Lisbon, 651 F.3d 715, 719-20 (7th Cir. 2011). She also acknowledges that she knew of the August 2023 Coroner encounter when it occurred and had recognized the family-identification discrepancy by September 2025, before the amendment deadline. She does not assert that a later legal characterization of already-known facts itself supplies good cause.

**17.** Nonetheless, additional official records and supplemental responses were produced or confirmed later. On August 18, 2026, defense counsel transmitted supplemental production identified as INDIANAPOLIS_000001-000540. Plaintiff informed counsel that she could not reliably access some electronic files and requested physical media. Defendants filed their summary-judgment motion on August 20, 2026, while the supplemental production was still under review. On August 21, 2026, Plaintiff participated in a discovery conference addressing outstanding responses; additional responses followed. Plaintiff described that chronology and the differing Field Deputy Report generations in her corrected September opposition. Dkt. 60, Bishop Decl. paras. 8-11, 15-24; Exs. F, M, P, R.

**18.** The later materials are relevant to the precise identification method, the accuracy of the official records, and the factual basis for a possible individualized pleading. They do not themselves excuse the failure to amend by November 18, 2025. Plaintiff asks for a brief opportunity to present the full pre- and post-deadline chronology, specify exactly what fact became newly available and when, and address the substantial obstacles of notice, limitations, immunity, jurisdiction, and futility in a complete amendment package.

**19.** The relief requested is limited to deferring final judgment until November 4, 2026, twenty-one days after the current show-cause deadline. Plaintiff does not request new discovery or automatic leave. If supported by the evidence and Rule 11, she would submit by that date a motion addressing Rules 16(b)(4) and 15(a)(2), a complete signed proposed Second Amended Complaint, and a proposed order under Local Rule 15-1. Defendants could respond to that motion, and the Court would retain full authority to reject an untimely or futile amendment.

**20.** Plaintiff seeks the Court's consideration of the actual proposed amendment before final judgment rather than asking the Court to assume that her earlier opposition already amended Dkt. 24. Plaintiff submits this response within the period fixed in Dkt. 61 and recognizes that a pending motion for deferral does not, without an order, suspend the October 14 deadline or prevent entry of judgment.

## VI. RELIEF REQUESTED

For these reasons, Plaintiff respectfully asks that the Court: (a) accept this response as compliance with Dkt. 61; (b) grant the separately submitted motion to defer entry of final judgment through November 4, 2026 solely to permit a properly supported motion for leave to amend; (c) assess any proposed amendment under Rules 16, 15, and 11 without reviving claims dismissed with prejudice; and (d) if further proceedings are denied, preserve the without-prejudice character of the dismissals so designated in Dkt. 61 to the extent legally permissible.

Respectfully submitted,

s/ Nadine Bishop
Nadine Bishop, Plaintiff pro se
1203 East 11th Street
Ford Heights, IL 60411
Telephone: 708-632-3534
Email: nadine37bishop@gmail.com
Dated: October 8, 2026

**CERTIFICATE OF SERVICE**

I certify that on ____________________, 2026, I served a true and correct copy of this document on all counsel of record by the following method authorized under Federal Rule of Civil Procedure 5: ________________________________.

s/ Nadine Bishop
Nadine Bishop